File Name: 06a0354n.06
Filed: May 17, 2006

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| PRIME MEDIA, INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE MIDDLE |
| CITY OF FRANKLIN, TENN., | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before:      **NELSON**, **DAUGHTREY**, and **ROGERS**, Circuit Judges.

**DAVID A. NELSON**, Circuit Judge.  This is a First and Fourteenth Amendment case involving municipal regulation of signage.  The district court permanently enjoined enforcement of height and size restrictions contained in the defendant's current sign ordinance.  The court also invalidated the entirety of an earlier version of the ordinance, while reserving for trial the issue of damages.  The defendant has taken an interlocutory appeal from these rulings.

The main questions before us are:  (1) whether we have jurisdiction to review the district court's invalidation of the earlier ordinance; (2) whether the current ordinance's height and size restrictions are narrowly tailored to serve a substantial government interest, leaving open ample alternative means of communication; and (3) whether alternative

challenges to the amended ordinance, which were not adjudicated by the district court, should be considered in this appeal. Answering these questions "no," "yes," and "no," we shall dismiss the portion of the appeal that challenges the invalidation of the earlier ordinance, reverse in part the grant of partial summary judgment for the plaintiff, reverse in part the denial of a defense motion for summary judgment, vacate the permanent injunction, and remand the case for further proceedings.

I

Prime Media, Inc., is in the business of erecting and operating signs. In October of 2002, Prime Media applied to the city of Franklin, Tennessee, for permission to construct three 14-foot by 48-foot billboards along Interstate Highway 65. The city's sign ordinance at that time allowed neither "off-site" signs — *i.e.*, signs "direct[ing] attention to a business, profession, commodity, service or . . . entertainment[] which is not conducted, sold, or offered upon the same lot of record" — nor signs exceeding (at most) 72 square feet per side to be erected within 1500 feet of I-65. The city's sign administrator denied the applications with the notation "Rejected as per sign ordinance. New billboards not allowed."

Alleging that the city's sign ordinance was unconstitutional both on its face and as applied, Prime Media sued the city in federal district court. The complaint challenged the ordinance's permit requirement in addition to various substantive restrictions.

In response to Prime Media's lawsuit, the city amended its sign ordinance. The amended ordinance eliminated the permit requirement and the distinction between "on-site" and "off-site" signs. But it tightened the existing height and size restrictions: under §8.7.8(7) of the amended ordinance, free-standing signs may not exceed six feet in height and 32 square feet per side.

Prime Media filed an amended complaint in which it asserted facial and as-applied challenges to both the amended ordinance and the original sign ordinance. In addition to its First Amendment challenges, Prime Media asserted claims under the Due Process and Equal Protection Clauses of the Fourteenth Amendment. Prime Media sought preliminary and permanent injunctions as well as damages, costs, and attorney fees.

The district court preliminarily enjoined enforcement of the height and size restrictions set forth in the amended ordinance. The court held that although the height and size restrictions are content-neutral, they are not narrowly tailored to advance the city's interests and do not leave open ample alternative means of communication. Holding also that the height and size restrictions are severable, the court declined to enjoin enforcement of the remainder of the amended ordinance.

The district court subsequently entered summary judgment in favor of Prime Media on its First Amendment challenges to the on-site/off-site distinction of the original ordinance and the height and size restrictions of the amended ordinance. The court invalidated the entirety of the original ordinance on the ground that the provisions distinguishing between

on-site and off-site signs were not severable. As it had in granting the preliminary injunction, however, the court held that the height and size restrictions could be severed from the amended ordinance. The court denied a defense motion for summary judgment. It granted a permanent injunction against enforcement of the height and size restrictions, it declined to invalidate the remaining provisions of the amended ordinance as facially unconstitutional, and it reserved the issue of damages for trial.

The city filed a timely notice of appeal. There was no cross-appeal.

II

We turn first to the jurisdictional question. The city asserts that 28 U.S.C. § 1292(a) grants us jurisdiction to hear this interlocutory appeal. Prime Media has not challenged that assertion, but we have an independent duty to inquire into the basis of our jurisdiction and satisfy ourselves that jurisdiction exists. See *Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 890 (6th Cir. 1998).

Under 28 U.S.C. § 1292(a)(1), the courts of appeals have jurisdiction to review "[i]nterlocutory orders of the district courts of the United States . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ." It is clear, therefore, that we may hear the city's appeal from the preliminary and permanent injunctions against enforcement of the amended ordinance's height and size restrictions. We may also review the summary judgment rulings on which the issuance of the permanent injunction was based. See *Gibson*

*Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 545 (6th Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3572 (U.S. Mar. 30, 2006)(No. 05-1263).

But § 1292(a)(1) does not grant us jurisdiction to review the district court's invalidation of the original ordinance. The court neither enjoined nor refused to enjoin enforcement of that ordinance (which had been superseded by amendment). Moreover, the issue raised on appeal with respect to the original ordinance — whether the provisions that distinguish between on-site and off-site signs can be severed from the remainder of the ordinance — is not closely intertwined with the issues raised in the appeal from the injunctions.[1]

Accordingly, we shall limit our review to the district court's issuance of injunctive relief. The portion of the appeal that challenges the invalidation of the original ordinance will be dismissed.

---

[1]The presence of the severance issue distinguishes this case from *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814 (6th Cir. 2005), another case in which a district court enjoined enforcement of height and size restrictions appearing in an amended sign ordinance and invalidated an off-site ban that appeared in an earlier version of the ordinance. The district court in *Brentwood* did not strike down the entirety of the original ordinance, which contained height and size restrictions identical to those of the amended ordinance. Because the height and size restrictions provided an alternative ground for denial of the plaintiff's applications under the original ordinance, our decision to uphold those restrictions (upon review of the injunction) required the rejection of a damages claim based on the invalidity of the off-site ban. See *Brentwood*, 398 F.3d at 824. It was appropriate, in those circumstances, for us to address the viability of the damages claim even though that issue was not independently appealable.

III

The city maintains that the height and size restrictions of its amended sign ordinance are consistent with the First Amendment. "[G]overnments may regulate the physical characteristics of signs and billboards," provided that the regulations (1) are content-neutral, (2) are narrowly tailored to serve a significant government interest, and (3) leave open ample alternative channels for communication. *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 818 (6th Cir. 2005) (internal quotation marks omitted); see *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The amended ordinance's height and size restrictions do not discriminate on the basis of content. See *Brentwood*, 398 F.3d at 819 (observing that similar height and size restrictions "regulate only the non-expressive components of billboards"). On de novo review, we must determine whether the restrictions satisfy the second and third criteria enumerated above.

A

"[T]he requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest" without burdening "substantially more speech than is necessary." *Ward*, 491 U.S. at 799 (internal quotation marks omitted); see *Brentwood*, 398 F.3d at 819-21. Sign height and size restrictions promote substantial municipal interests in aesthetics and traffic safety. See *Brentwood*, 398 F.3d at 819. The

question is whether the amended ordinance's restrictions burden a substantial amount of speech that does not threaten those interests.

In *Brentwood*, we held the defendant's sign height and size restrictions to be narrowly tailored because their burden fell directly and exclusively on billboards:

> "The fit between the City's means and ends is a reasonable one. The agreed-upon evils of billboards are visual blight and traffic safety. And the City did not regulate 'a possible by product' of this problem, *see* [*Members of City Council of Los Angeles v.*] *Taxpayers for Vincent*, 466 U.S. [789,] 810 [(1984)], but the problem itself — 'the medium of expression,' *id.* As it was in *Taxpayers for Vincent*, so it is here: 'By banning these signs, the City did no more than eliminate the exact source of the evil it sought to remedy.'" *Brentwood*, 398 F.3d at 821.

Likewise, the height and size restrictions challenged in the case at bar burden only large signs — *i.e.*, those signs that are most likely to "interfere with aesthetic or traffic safety concerns." *Id.* at 822. They do not limit any other form of speech.

The size restriction here is more stringent than the size restriction in *Brentwood*. (Face area there was limited to 120 square feet, or 60 square feet per side.) But the city need not show that it chose the least restrictive means of achieving its goals, nor need it justify its choice of 32 square feet per side rather than a greater size limit. See *Ward*, 491 U.S. at 797-800; *Brentwood*, 398 F.3d at 822-24. The regulation will pass constitutional muster unless it is "substantially broader than necessary to achieve the government's interest." *Ward*, 491 U.S. at 800; see *Brentwood*, 398 F.3d at 822.

Guided by our decision in *Brentwood*, we conclude that the ordinance passes this "more modest test." *Brentwood*, 398 F.3d at 822. In *Brentwood*, it was enough that the

defendant city had found its height and size restrictions to "'[have] had a positive impact' on

[its] stated interests." *Id*. at 823 (first alteration in original). In the case at bar, the city's

planning director stated in an affidavit that the amended ordinance's height and size

restrictions "substantially contribute to the quality of the environment" without significantly

limiting "the community's ability to get out [its] message." Two real estate developers made

similar averments. Moreover, there is evidence that new commercial developments in the

city tended to use smaller signs even before the amended ordinance was adopted; the

average height and size of signs erected in such developments between January 1, 2000, and

June 30, 2003, was 6.6 feet and 27.7 square feet per side. This evidence of private

downsizing — evidence not contradicted by Prime Media[2] — supports the city's position as

to the reasonableness of a six-foot height limit and a 32-square-foot size limit in light of the

city's aesthetic goals.

Prime Media cites a portion of the *Brentwood* opinion that suggests more "demanding

review" is appropriate

> "where [a] regulation is not content-neutral, where it does not leave ample
> alternative channels for communication because it is (or nearly is) a complete
> ban, or where the broad sweep of the regulations themselves show that the

---

[2]Prime Media faults the city for failing to explain why different height and size limits would not be appropriate for signs adjacent to I-65. But there is no evidence that large signs are less aesthetically displeasing when placed next to an interstate highway, and the city's judgment that uniform height and size limits will best serve its aesthetic interests remains subject to considerable deference. Just such deference was extended in *Brentwood*, a case where the plaintiff likewise wanted to place oversized signs near I-65.

government did not reasonably weigh the costs and benefits of regulating speech." *Brentwood*, 398 F.3d at 824 (internal quotation marks omitted).

We are not persuaded, however, that the city's height and size restrictions are subject to greater scrutiny under *Brentwood*. As we have said, the restrictions are content-neutral. See *id.* at 819. Because they allow smaller signs, the restrictions do not effect a complete ban. Finally, the city's evidence shows that the restrictions were adopted through reasoned deliberation. The affidavit of the city's planning director explains that the city "considered many factors in revising its sign ordinance . . . ." These factors included the trend toward smaller signs in the city's new commercial developments, "the success of the six foot height restrictions in Brentwood, Tennessee," and the possibility that elevated "small billboards" (which city officials had observed elsewhere) could be erected to the detriment of the city's aesthetic goals unless the city tightened its sign-height limit. The city reasonably concluded that the amended height and size restrictions would advance its aesthetic interests without unduly burdening speech.

B

By allowing smaller signs as well as all other lawful means of expression, the city's height and size restrictions leave open ample alternative channels of communication. See *Ward*, 491 U.S. at 802; *Brentwood*, 398 F.3d at 819.

Prime Media argues that the restrictions do not leave open adequate means of communication "along I-65." But alternative channels of communication need not be

available at every location, or at the most desirable location, within a city. See *Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 53-54 (1986) (holding that five percent of city's land area, consisting of sites said not to be "commercially viable," provides sufficient alternative locations for an adult theater). And Prime Media's intended audience — persons who drive on I-65 — can obviously be reached through a variety of means when they are not on the interstate. Local residents and travelers who stop in the city can be reached through newspapers, radio, television, smaller signs off the I-65 corridor, and other traditional means of communication (such as leafleting). Travelers who do not stop in the city can be reached through radio, regional or national newspapers and television, and billboards located outside the city. Prime Media has presented no evidence that these alternatives are inadequate to convey its messages.[3]

Given the many alternative means of expression left open by the city's height and size restrictions, we do not think it matters whether conforming signs can be read from I-65 at normal highway speeds. Conforming signs located elsewhere in the city could undoubtedly be read by motorists there. Even if the restrictions have the practical effect of prohibiting all legible signs along the interstate, ample alternative channels for speech remain available. We

---

[3]In *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 516 (1981)(plurality opinion), the Supreme Court said that the alternatives to outdoor signs "are far from satisfactory." In that case, however, the parties had stipulated that "other forms of advertising are insufficient, inappropriate and prohibitively expensive," *id*. at 497, 516; there was no such stipulation in the case at bar.

conclude that the height and size restrictions of the amended ordinance do not offend the First Amendment.

IV

Prime Media has asserted other constitutional challenges to the amended ordinance that could, if successful, justify the injunctions that were issued in this case. The city asks us to decide the merits of those challenges — a due process claim, an equal protection claim, and a facial First Amendment challenge to provisions other than the height and size restrictions.

We decline the city's invitation. The district court, having concluded that the height and size restrictions were unconstitutional, did not address Prime Media's alternative theories. We think it is appropriate to remand the unadjudicated claims so that the district court may consider them in the first instance. See *Brentwood*, 398 F.3d at 825.

V

This appeal is **DISMISSED** insofar as it challenges the invalidation of the original ordinance. The summary judgment rulings on Prime Media's First Amendment challenge to the height and size restrictions of the amended ordinance are **REVERSED**, and the permanent injunction against enforcement of those restrictions is **VACATED**. The case is **REMANDED** for further proceedings not inconsistent with this opinion.