RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 14a0047p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

HUCUL ADVERTISING, LLC,  a Michigan
limited liability company,

                 *Plaintiff-Appellant*,

      *v.*

CHARTER TOWNSHIP OF GAINES, a Michigan
municipal corporation,

               *Defendant-Appellee*.

No. 12-2343

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:11-cv-00682—Robert Holmes Bell, District Judge.

Argued: December 3, 2013

Decided and Filed:  February 5, 2014[*]

Before:  BOGGS, SILER, and CLAY, Circuit Judges.

_____

### COUNSEL

_____

**ARGUED:** Steven F. Stapleton, MILLER CANFIELD, Grand Rapids, Michigan, for
Appellant.  Craig R. Noland, SMITH HAUGHEY RICE & ROEGGE, Grand Rapids,
Michigan, for Appellee. **ON BRIEF:** Steven F. Stapleton, MILLER CANFIELD, Grand
Rapids, Michigan, for Appellant.   Craig R. Noland, William L. Henn, SMITH
HAUGHEY RICE & ROEGGE, Grand Rapids, Michigan, for Appellee.

_____

### OPINION

_____

BOGGS, Circuit Judge.   This case concerns the constitutionality of a zoning
ordinance that regulates the construction of billboards.  Hucul Advertising, LLC, sought

_____

[*] This decision was originally issued as an "unpublished decision" filed on February 5, 2014.  The
court has now designated the opinion as one recommended for full-text publication.

permission to construct a billboard on its property in the Charter Township of Gaines, in Michigan. The Township denied Hucul's application on the ground that the proposed billboard would violate Chapter 17 of the Gaines Township Zoning Ordinance, which regulates signs within the Township's boundaries. The ordinance at the time permitted billboards only on property that was "adjacent" to the M-6 highway right-of-way, and Hucul's property did not satisfy the adjacency requirement. Hucul then submitted an application to build a digital billboard on the property. That application was also denied, as the property was not adjacent to the M-6, and the proposed digital billboard would be located within 4,000 feet of another digital billboard, which was also a violation of the applicable zoning ordinance. Hucul then applied to the Zoning Board of Appeals ("ZBA") for relief, seeking approval to install a digital billboard, which the ZBA denied. The Township subsequently amended the ordinance's adjacency requirement to also require that any proposed billboard be built within 100 feet of the M-6 and to clarify that, in order for a parcel to be adjacent to the M-6, it must "abut and have frontage on the M-6."

Hucul sued the Township in state court, challenging the ZBA decision, and claiming, *inter alia*, that the zoning ordinance violated the First Amendment, that the Township violated Hucul's civil rights by enforcing the ordinance, and that the Township violated the Equal Protection Clause by treating land adjacent to public property differently from land adjacent to private property. The Township removed the case to federal district court, and the district court granted summary judgment to the Township on all issues. Hucul appeals, maintaining that the billboard regulations violate the First Amendment and the Equal Protection Clause, and arguing that the district court improperly exercised supplemental jurisdiction over the ZBA appeal.

We hold that the 4,000-foot spacing requirement for digital billboards constitutes a valid "time, place, and manner" restriction on speech. Since Hucul's proposed digital billboard does not satisfy this requirement, Hucul would not be entitled to relief even if its objections to the adjacency requirements had merit. Accordingly, we need not consider whether the adjacency requirements violate either the First Amendment or the

Equal Protection Clause. With regard to Hucul's jurisdictional claim, we hold that the district court did not abuse its discretion in exercising jurisdiction over the ZBA appeal.

**I**

We review a district court's grant of summary judgment de novo. *Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 565 (6th Cir. 2005). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). When ruling on a summary-judgment motion, a court must draw all reasonable inferences from the evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

We review for abuse of discretion a district court's decision to exercise supplemental jurisdiction over state-law claims. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002). "An abuse of discretion exists only when we are left with the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 709 (6th Cir. 2012) (citations and internal quotation marks omitted).

**II**

**A**

Hucul argues that the district court erred in holding that the 4,000-foot spacing requirement for digital billboards did not violate the First Amendment. In particular, it claims that the requirement is an impermissible restriction on commercial speech.

We must first decide what test to apply to determine whether the ordinance violates the First Amendment. Hucul argues that the district court erred in applying the "time, place, and manner" test for content-neutral restrictions on speech, instead of the

*Central Hudson* test for restrictions on commercial speech.  Pl's Br. at 16; *see Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984); *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980).  Under the "time, place, and manner" test, restrictions on speech "are valid provided [1] that they are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored [3] to serve a significant governmental interest, and [4] that they leave open ample alternative channels for communication of the information."  *Prime Media, Inc. v. City of Brentwood, Tenn.*, 398 F.3d 814, 818 (6th Cir. 2005) (quoting *Clark*, 468 U.S. at 293).  Under the *Central Hudson* test,

> we must (1) determine whether the expression is protected by the First Amendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask whether (2) the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must (3) determine whether the regulation directly advances the governmental interest asserted, and (4) whether it is not more extensive than is necessary to serve that interest.

*Bench Billboard Co. v. City of Toledo*, 499 F. App'x 538, 543 (6th Cir. 2012) (internal alteration marks omitted) (quoting *Central Hudson*, 447 U.S. at 566), *cert. denied*, 133 S. Ct. 1252 (2013).

Hucul asserted its claim below under the *Central Hudson* test, arguing that the challenged ordinance regulates commercial speech.  The district court, however, analyzed Hucul's claims under the "time, place, and manner" test, on the ground that the challenged ordinance is content-neutral on its face, i.e., it does not purport to regulate commercial speech only, nor does it distinguish between commercial and non-commercial billboards.  On appeal, Hucul continues to argue its claim under the *Central Hudson* standard.  The Township cites both tests in its brief but does not argue for the use of one or the other; rather, it simply responds to Hucul's arguments under the *Central Hudson* test.

As a practical matter, the choice of which test to apply makes little difference here: the two tests impose similarly demanding levels of "intermediate scrutiny," *Bench*

*Billboard Co. v. City of Covington*, 465 F. App'x 395, 404 (6th Cir. 2012), and, as relevant to this dispute, both tests impose similar requirements: under the "commercial speech" test, the restrictions must "directly advance" a "substantial" governmental interest, whereas under the "time, place, and manner" test, they must be "narrowly tailored" to a "significant" governmental interest.[1]  In any event, we agree with the district court that the appropriate test here is for "time, place, and manner" restrictions on speech.  We have held that, where an ordinance regulates both commercial and non-commercial speech and does not differentiate between the two, the application of time, place, and manner scrutiny is appropriate.  *Id*. at 405 ("*Central Hudson's* form of intermediate scrutiny is not appropriately applied to content-neutral ordinances that regulate both commercial and non-commercial speech." (citing *Cleveland Area Bd. of Realtors v. City of Euclid*, 88 F.3d 382, 386 (6th Cir. 1996)); *see also Prime Media*, 398 F.3d 814 (applying the "time, place, and manner" test to analyze the constitutionality of size and height restrictions for billboards); *Prime Media, Inc. v. City of Franklin, Tenn.*, 181 F. App'x 536 (6th Cir. 2006) (same).  Accordingly, we evaluate the ordinance under the "time, place, and manner" test.

**B**

As background, we note that "[b]illboards and other visual signs . . . represent a medium of expression that the Free Speech Clause has long protected." *Prime Media,* 398 F.3d at 818.  At the same time, "they 'pose distinctive problems' that also have long been subjected to the 'police powers' of States and cities because billboards and signs 'take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation.'" *Id.* (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994)).  We analyze the spacing requirement for digital billboards in that context.

---

[1] *See Prime Media*, 398 F.3d at 824 ("As the Supreme Court has held, the framework for analyzing regulations of commercial speech is substantially similar to the test for time, place, and manner restrictions. And the commercial-speech tailoring requirement—a reasonable fit between the legislature's ends and the means chosen to accomplish those ends—is a close cousin, if not a fraternal twin, of the test that we have applied here." (internal citations and quotation and alteration marks omitted)).

To constitute a valid restriction on the time, place, and manner of speech, a restriction must first be "justified without reference to the content of the regulated speech." *Clark*, 468 U.S. at 293. To determine whether a regulation is content-neutral, we ask "whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). The requirement that digital billboards be spaced a certain distance apart cannot reasonably be considered an attempt to censor a message: it addresses whether and under what circumstances one may build a billboard—whatever its content—not what that billboard may or may not say. In addition, the purported goals of the ordinance are content-neutral. They include "[e]liminat[ing] distractions that are hazardous to motorists and pedestrians," "[p]rotect[ing] and enhanc[ing] property values," preventing "visual chaos and clutter," and "[p]rotect[ing] the natural beauty and distinctive character of Gaines Charter Township." TWP. OF GAINES, MICH., ZONING ORDINANCE § 17.1. The ordinance thus aims to promote traffic safety and aesthetics and preserve property values, without reference to the content of the regulated speech. Hucul does not appear to dispute that the spacing requirement for digital billboards is content-neutral.

To constitute a valid restriction, the governmental interests that the spacing requirement purports to serve must also be significant. We have long recognized that governmental interests in aesthetics, traffic safety, and the preservation of property values constitute "significant governmental interests." *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981) (affirming that "the twin goals that the ordinance seeks to further—traffic safety and the appearance of the city—are substantial governmental goals"); *see also Rzadkowolski v. Vill. of Lake Orion*, 845 F.2d 653, 655 (6th Cir. 1988) (upholding regulations that "promote significant and legitimate aesthetic interests which enhance property values and psychological well-being for individuals and families"). Hucul does not dispute that the asserted governmental interests are significant. We agree with the district court's determination that the regulation easily satisfies this criterion.

The next question is whether the regulations are narrowly tailored to serve the governmental interests mentioned. As the Supreme Court has explained, "[s]o long as the means chosen are not substantially broader than necessary to achieve the government's interest . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech-restrictive alternative." *Ward*, 491 U.S. at 800. Rather, we only require "a reasonable fit between the legislature's ends and the means chosen to accomplish those ends." *Prime Media*, 398 F.3d at 822 (citations and internal alteration and quotation marks omitted).

To determine whether the ordinance's spacing requirement is "narrowly tailored," it is helpful to briefly review controlling precedent on this issue. In *Metromedia*, the Supreme Court invalidated San Diego's prohibitions on outdoor advertising on the ground that they were content-based, but a majority of the Court would have found that even a total ban on billboards was "narrowly tailored" to achieve the interests of aesthetics and traffic safety. *See Prime Media*, 398 F.3d at 820 (explaining the Supreme Court's reasoning). In *Ward*, the Supreme Court upheld New York City's requirement that a city sound technician control the mixing board during concerts at a bandshell in Central Park, despite the availability of alternative methods of regulating sound volume. *Ward*, 491 U.S. at 800 ("It is undeniable that the city's substantial interest in limiting sound volume is served in a direct and effective way by the requirement that the city's sound technician control the mixing board during performances. Absent this requirement, the city's interest would have been served less well."). And in *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 808 (1984), the Court upheld a complete ban on posting signs on telephone poles and similar public property, reasoning that "the City did no more than eliminate the exact source of the evil it sought to remedy."

Consistent with the Supreme Court's reasoning, in *Rzadkowolski*, we "upheld a billboard regulation as sufficiently tailored to achieve the interests of aesthetics and traffic safety even though the regulations banned billboards in all but the small village's

one industrial zone." *Prime Media*, 398 F.3d at 821. We "upheld the restrictions because most of the village was residential, and the restrictions promote[d] significant and legitimate aesthetic interests which enhance property values and psychological well-being for individuals and families. They may [have] also minimize[d] traffic obstructions and possible visual hazards." *Id.* (quoting *Rzadkowolski*, 845 F.2d at 655). Likewise, in *Prime Media*, we upheld size and height restrictions for billboards as "narrowly tailored" to the City of Brentwood's interests in avoiding visual blight and improving traffic safety. *Id.*

Hucul, framing its argument in terms of the related requirements under the *Central Hudson* test, argues that "the regulations do not directly advance the necessary governmental interest." Pl.'s Br. at 16. First, Hucul points out that the Michigan Highway Advertising Act ("MHAA"), Mich. Comp. Laws §§ 252.301-.323, allows for digital billboards within 1,000 feet of each other. But as the district court explained, the MHAA sets forth "a minimum spacing requirement rather than a mandatory or maximum spacing requirement." *See* Mich. Comp. Laws § 252.317 (providing that a sign structure "shall not be erected closer than 1,000 feet to another sign structure on the same side of the highway") and *Twp. of Homer v. Billboards by Johnson, Inc.,* 268 Mich. App. 500, 504 (2005) (holding that the MHAA "sets forth minimum requirements that a township cannot fall below, but that a township is free to exceed"). The fact that different townships may exercise their discretion differently and reach different judgments does not render the restrictions imposed by any one township unreasonable and not "narrowly tailored" to a township's goals.

Second, Hucul claims that the Township "does not justify" its decision to treat digital billboards differently from static ones, which are not subject to the 4,000-foot spacing requirement. Pl.'s Br. at 19. As the district court explained, however, the Township need not offer an exact justification for the particular number that it chose. In *Prime Media*, we recognized that "ask[ing] the City to justify a size restriction of 120 square feet over, say, 200 square feet or 300 square feet would impose great costs on local governments and at any rate would do little to improve our ability to review the

law—because any further explanation assuredly would contain the kind of aesthetic and subjective judgment that judges are not well-equipped to second guess." 398 F.3d at 823–24. The fact that the Township could reasonably have imposed a spacing requirement of less than 4,000 feet does not render its choice unreasonable or substantially broader than necessary to achieve its goals. In addition, the Township did in fact justify its decision to treat digital billboards differently. As the district court explained, and as Hucul's own witnesses acknowledged, digital billboards can have a greater effect on safety and aesthetics than static ones due to their increased visibility and changing display.

Hucul cites a Michigan Court of Appeals case in which the court struck down a ban on "readily changeable signage," where the defendant "offer[ed] no justification for this restriction and [the court could] discern none." *See Outdoor Sys., Inc. v. City of Clawson*, 686 N.W.2d 815, 821 (2004). In that case, the zoning ordinance banned all "billboards," which it defined as signs a) unrelated to the principal use of the premises and b) on which the display could readily be changed. *Id.* at 818. The court held that the city's distinction between signs that could and could not be "readily changed" effectively prohibited outdoor-advertising companies from doing business and without justification. *Id.* at 821.

Hucul argues that "the District Court did not like the holding in *Outdoor Systems* . . . and simply failed to follow it." Pl.'s Br. at 20. But Hucul's objections are unfounded. As a preliminary matter, we note that a state court's interpretation and application of the First Amendment of the United States Constitution are not binding on this court. Regardless, *Outdoor Systems* is easily distinguished from this case, since it dealt with what was effectively a ban on all billboards unrelated to the premises on which they were built, rather than a restriction on digital signs that can change visually from moment to moment. As the state court reasonably found, the fact that a sign may change from time to time when space is leased to a new advertiser does not necessarily render it more of an aesthetic or safety concern than a sign that cannot change at all. Such an argument does not apply, however, to digital billboards, which change

constantly, and may very well present greater safety concerns (and perhaps greater aesthetic ones) than do static billboards—digital billboards may be animated, and they may be brighter and more distracting than static ones. Indeed, as Hucul acknowledged, digital billboards are visible from a greater distance and may be more effective at drawing the viewer's attention. Accordingly, we cannot conclude that the Township's decision to treat them differently was unreasonable. Again, although the government's restriction on speech must "reasonably fit" the ends it seeks to achieve, the fit need not be perfect. Moreover, Hucul offers no evidence suggesting that a 4,000-foot spacing requirement provides no incremental benefits over a less restrictive regulation. We hold that the Township's "time, place, and manner" restriction is "narrowly tailored" to its ends.

Finally, we must determine whether the spacing requirement leaves open ample alternative channels for communication. We conclude that it does. The regulation permits digital billboards that satisfy the spacing requirement and static billboards spaced more closely together, and does not foreclose the use of any other modes of communication. *See Prime Media*, 398 F.3d at 819 (holding that "the regulations leave open ample alternative communication because they permit billboards that satisfy the . . . restrictions" and because they "do 'not affect any individual's freedom to exercise the right to speak and to distribute literature in the same place where the posting of signs on public property is prohibited'" (quoting *Taxpayers for Vincent*, 466 U.S. at 812)). Hucul does not argue that it does not have adequate alternative means of communication at its disposal.

In view of the foregoing analysis, we hold that the billboard-spacing requirement does does not violate Hucul's First Amendment right to free speech. Since the requirement is valid, Hucul's failure to satisfy it is dispositive of its remaining claims for relief aside from its jurisdictional claim, which we turn to below.

**III**

Hucul argues that the district court "abused its discretion when it opted to exercise supplemental jurisdiction over [Hucul's] purely state law zoning appeal." Pl.'s Br. at 26. Hucul argues that the district court should not have decided the appeal; rather, it should have left the matter for a state court to decide.

Under federal law, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). This includes supplemental jurisdiction over "state claims for on-the-record review of local administrative action." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 171 (1997). Claims form part of the same case or controversy when they "derive from a common nucleus of operative facts." *Blakely*, 276 F.3d at 861 (citation omitted).

Here, Hucul's zoning appeal involves the same factual issues as Hucul's related federal claims, i.e., the denial of its application for permission to construct a digital billboard on its property. Hucul does not dispute that the district court had, a priori, the right to exercise jurisdiction over the state-law zoning appeal on the grounds that the state appeal and the federal claims formed part of the same case or controversy.

The question is whether the district court nonetheless abused its discretion in exercising supplemental jurisdiction. Under 28 U.S.C. § 1367(c), a district court "may decline" to exercise supplemental jurisdiction "if—

    (1) the claim raises a novel or complex issue of State law,

    (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

    (3) the district court has dismissed all claims over which it has original jurisdiction, or

    (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

None of those exceptional circumstances is present in this case, and Hucul does not argue otherwise. When one of those circumstances is present, we review the district court's decision not to exercise supplemental jurisdiction for abuse of discretion. But in the absence of any such circumstance, it does not appear that a court would be authorized—let alone required—to decline to exercise jurisdiction. The statute, in authorizing the district court to decline to exercise supplemental jurisdiction under certain circumstances ("district courts *may* decline") (emphasis added), would appear by implication to require the exercise of jurisdiction under all other circumstances—*expressio unius est exclusio alterius*. Therefore, where no statutory exception applies, a district court cannot abuse its discretion in exercising supplemental jurisdiction over a state-law claim that forms part of the same case or controversy.

In any event, the district court did not abuse whatever discretion it may have had by deciding the state-law zoning appeal in this case. Hucul does not argue that the zoning appeal raised a novel or complex issue of state law or predominated over Hucul's numerous federal claims. Nor did the district court dismiss all the claims over which it had original jurisdiction; instead, it resolved Hucul's First Amendment and equal-protection claims on the merits. Finally, Hucul does not argue, nor do we find, that other compelling circumstances exist for declining to exercise jurisdiction in this case.

**IV**

The judgment of the district court is AFFIRMED.