RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0058p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

SCOTT W. WILLIAMS,

　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

ADDISON COMMUNITY SCHOOLS; JOSH PERRY;
MICHAEL MURPHY; JENNIFER FROST; ANDREA
WOODRING; KIM FORD; STEVE GUERRA,

　　　　　　　　*Defendants-Appellees*.

No. 25-1205

─────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:22-cv-12742—Brandy R McMillion, District Judge.

Argued:  December 10, 2025

Decided and Filed:  March 2, 2026

Before:  GIBBONS, STRANCH, and DAVIS, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:**  Jeffrey L. Herron, HERRON LAW GROUP, Detroit, Michigan, for Appellant.
Gregory W. Mair, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees.
**ON BRIEF:**  Jeffrey L. Herron, HERRON LAW GROUP, Detroit, Michigan, for Appellant.
Gregory W. Mair, O'NEILL, WALLACE & DOYLE, P.C., Saginaw, Michigan, for Appellees.

─────────────

## OPINION

─────────────

DAVIS, Circuit Judge.  Scott Williams filed this action against Addison Community Schools and the then-superintendent of the School District plus five members of the School Board in their individual and official capacities.  On appeal, Williams challenges the district

court's denial of his partial motion for summary judgment as to his constitutional tort claim under the Fair and Just Treatment clause of the Michigan constitution, and he challenges its grant of Defendants' motion for summary judgment as to that same claim. For the reasons stated below, we vacate the district court's decision and remand.

**I.**

Scott Williams was elected to the Addison Community School Board (the "Board") in November 2020 for a term of six years beginning in January 2021 and ending in January 2027. At all relevant times, Defendants Joshua Perry, Michael Murphy, Jennifer Frost, Andrea Woodring, and Kim Ford were also members of the Board. In January 2022, the Board unanimously chose Williams to serve as Board president for a one-year term. The Board is governed by bylaws. Those bylaws specify that officers, including the president, "shall serve for one (1) year and until their respective successors are elected" and "may be removed for cause by a majority vote of the full Board." (Defs.' Mot. Summ. J., Ex. 2, R. 36-3, PageID 352). The bylaws also provide that "[t]he parliamentary authority governing the Board of Education shall be Robert's Rules of Order."[1] (Pl.'s Am. Mot. Partial Summ. J., Ex. 2, R. 39-3, PageID 1027).

On March 28, 2022, Williams and Wendy Rokita, the district's chief financial officer, had a verbal dispute during an open-session Board meeting. After this meeting, Rokita approached Perry and shared her concerns about Williams's conduct and professionalism, specifically that Williams was harassing and intimidating her and other staff and had requested confidential information. Shortly afterward, Perry began an investigation of Williams.

Murphy and Perry subsequently prepared a resolution for the Board's consideration, in which they alleged that Williams submitted improper requests for student information, took unauthorized actions, and harassed staff and the superintendent, in violation of the Board's bylaws. The resolution sought to censure Williams and remove him from his role as president.

---

[1]Robert's Rules of Order ("Robert's Rules") is "one of the leading sources of parliamentary law in the United States." *Cleary v. News Corp.*, 30 F.3d 1255, 1258 (9th Cir. 1994); *see Mobley v. Tarlini*, 641 F. Supp. 2d 430, 434 n.2 (E.D. Pa. 2009) (explaining that Robert's Rules "is a parliamentary manual whose provisions govern legislative bodies and other deliberative assemblies").

On April 8, 2022, Superintendent Steve Guerra emailed the Board to schedule a special meeting to address the removal of an officer.  Guerra's email indicated that he was acting on the request of two Board members, and the message did not specify which officer might be removed or the basis for any such removal.  From conversations with Guerra, Williams learned that he was the officer that the Board members sought to remove.

On April 25, 2022, the Board met to discuss Murphy and Perry's resolution.  No one informed Williams before the meeting what allegations, if any, might be raised against him.  He learned about the specific allegations only after the meeting was in process.  At Williams's request, the meeting proceeded in closed session.  And Williams's niece, who according to Williams is a law school graduate but not a practicing lawyer, accompanied him as his representative.  At the end of the meeting, the Board voted to adopt the resolution in full and removed Williams from his position as president.

Williams brought this action, alleging due process violations under the United States and Michigan constitutions and state constitutional torts under the Free Speech and Fair and Just Treatment clauses of the Michigan Constitution.[2]  And he argued that Addison Community Schools (the "District") is subject to *respondeat superior* liability for the state constitutional violations.  Defendants moved for summary judgment on all counts, and Williams moved for partial summary judgment on his state Fair and Just Treatment claim.  The district court granted Defendants' motion in its entirety and denied Williams's motion.  After dismissing Williams's federal due process claim, the district court exercised supplemental jurisdiction to also dismiss Williams's state claims.  Williams now appeals (1) the district court's denial of his partial motion for summary judgment on his Fair and Just Treatment claim and (2) the district court's grant of Defendants' motion for summary judgment on only his Fair and Just Treatment claim, including *respondeat superior* liability against the District.

---

[2]The parties stipulated to the dismissal of Williams's due process claims for violation of his liberty interest (Counts II and IV), with prejudice, under the U.S. and Michigan constitutions.

**II.**

We review a district court's decision to exercise supplemental jurisdiction for abuse of discretion. *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 806 (6th Cir. 2015).

**III.**

This case comes to us in a relatively rare procedural posture. The district court dismissed all of Williams's claims—both federal and state—on the merits. To do so, the court exercised supplemental jurisdiction over Williams's state law claims after disposing of the federal claims. Williams has chosen to appeal only the district court's disposition of a single state law claim, arising under Michigan's constitution. As it happens, Michigan has not yet spoken to the question of whether a private right of action exists for claims brought under the Fair and Just Treatment clause of the Michigan constitution. So, just as the district court was, we are left to make our best prediction of how the Michigan Supreme Court would answer this question. *Faber v. Ciox Health, LLC*, 944 F.3d 593, 601 (6th Cir. 2019). But as an initial matter, although the parties contest the merits of the district court's decision, we consider whether the exercise of supplemental jurisdiction is appropriate under the circumstances of this case. And we conclude that it is not.

A district court retains supplemental jurisdiction over all state-law claims that "form part of the same case or controversy" as the claims over which the court has original jurisdiction. 28 U.S.C. § 1367(a). The district court, however, may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* § 1367(c). To be clear, under § 1367(c), "a district court may, not must, decline to exercise supplemental jurisdiction" where the outlined scenarios exist. *Blakely v. United States*, 276 F.3d

853, 863 (6th Cir. 2002). But the district court's discretion is not limitless and "is bounded by constitutional and prudential limits on the use of federal judicial power." *Stanley v. W. Mich. Univ.*, 105 F.4th 856, 866 (6th Cir. 2024) (citation omitted). In determining whether to exercise supplemental jurisdiction, the district court should balance several factors, including judicial economy, convenience, fairness, and comity. *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010); *see Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993) (explaining that the district court should weigh "the interests of judicial economy and the avoidance of multiplicity of litigation" against "needlessly deciding state law issues"). Because the district court here had original jurisdiction over Williams's federal claims, § 1367(a) empowered the district court to exercise supplemental jurisdiction over the state law claims. *See Robert N. Clemens Tr. v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007). These claims, like the federal claims, were centered on Williams's removal from his position as president of the Board. Thus, the underlying facts formed part of the same case or controversy. Nonetheless, prudential concerns in this case lead us to question whether exercising supplemental jurisdiction was a proper exercise of discretion. Because most of the circumstances contemplated by § 1367(c) are present here, we hold that it was not.[3]

First, Williams's Fair and Just Treatment claim and related theory of *respondeat superior* liability raise novel or complex issues of state law. The Fair and Just Treatment clause of the Michigan Constitution provides that "[t]he right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." Mich. Const. Art. I, § 17. Few Michigan cases analyze this clause, and the most extensive discussion of the provision appears in an unpublished Michigan Court of Appeals decision. Indeed, the parties acknowledge the limited case law addressing the Fair and Just Treatment clause. And Williams specifically requested that the case be heard because it raises unresolved issues of state law. As it regards the plain language, the Michigan Constitution does not define "legislative" or "executive" as used in the Fair and Just Treatment clause. And the Michigan Supreme Court has not previously construed

---

[3]The second situation under § 1367(c) (*i.e.*, whether the state-law claim substantially predominates over the federal claims) does not apply here.

the meaning of legislative or executive as used in this clause.  Resolving Williams's claim thus requires interpreting in the first instance a provision of the Michigan Constitution.  And, without the benefit of an analogous clause under the United States Constitution, we are unable to draw from federal law interpretations in construing its meaning.

In *Kowall v. Benson*, 18 F.4th 542 (6th Cir. 2021), we held that the district court should have declined to exercise supplemental jurisdiction over state law claims where the district court dismissed the federal claims and "the parties raise[d] novel questions of state constitutional law," which we determined "are best left for state courts to answer in the first instance."  *Id.* at 549 (citing *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008)).  In *Brown*, we likewise held that the district court abused its discretion in deciding Michigan intentional infliction of emotional distress ("IIED") claims after dismissing the federal claims.  There, we observed that "the interests of judicial economy and the avoidance of multiplicity of litigation did not trump the interest in needlessly deciding state law issues."  546 F.3d at 363 (citation modified).  And even though the district court in *Brown* believed that resolution of the IIED claims was necessary to its determination of some of the federal claims, we determined that this mistaken belief did not justify the exercise of supplemental jurisdiction.  Similarly, in *Moon v. Harrison Piping Supply*, we concluded that the district court's exercise of supplemental jurisdiction was improper because the state IIED claims "implicate[d] complex aspects of Michigan law."  465 F.3d 719, 728 (6th Cir. 2006).

Considering the caution we expressed in *Brown* and *Moon* about exercising supplemental jurisdiction to decide novel state tort law claims, it seems axiomatic that construing a unique provision of Michigan's constitution would qualify as sufficiently complex to warrant restraint in employing supplemental jurisdiction.

Here, the district court granted summary judgment to Defendants on Williams's 42 U.S.C. § 1983 claims.  So this fact weighed in favor of declining supplemental jurisdiction over the remaining state law claims.  *See Stanley*, 105 F.4th at 867 (explaining that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims" (citation omitted)).  True, the district court is not required to dismiss the state law claims after dismissing all the federal claims.  *Varsity Brands, Inc. v. Star*

*Athletica, LLC*, 799 F.3d 468, 493 (6th Cir. 2015). But the combination of the dismissal of all federal claims and the novelty and complexity of the remaining state claims strongly supported declining the exercise of supplemental jurisdiction in this case.

Finally, this case presents exceptional circumstances that raise other compelling reasons for declining jurisdiction. As discussed, there is no federal analogue for Michigan's Fair and Just Treatment clause. Nor does Michigan have a statute like § 1983, which creates a federal right of action for certain violations of the United States Constitution and federal laws. So concerns around federal-state comity counsel that we abstain from needlessly intruding into significant state matters, such as the interpretation in the first instance of unique provisions of the state's constitution. *See Kowall*, 18 F.4th at 549.

Although efficiency considerations weigh in favor of the exercise of supplemental jurisdiction, those interests do not outweigh the comity interests here. Again, the circumstances of this case are relatively rare; in the run-of-mine case, state claims that remain after all federal claims have been resolved will involve questions that are neither novel nor complex. And even less frequently will they involve novel and complex questions arising from a state's constitution. But because this case presents just such a rarely occurring circumstance, it was not a proper exercise of discretion to take on Williams's Michigan Fair and Just Treatment claim and related theory of *respondeat superior* liability.

That said, we reiterate that a district court does not abuse its discretion in exercising supplemental jurisdiction where none of the circumstances under § 1367(c) exists. *See Hucul Advert., LLC v. Charter Twp. of Gaines*, 748 F.3d 273, 281 (6th Cir. 2014). And indeed, "the default assumption is that the court will exercise supplemental jurisdiction over all related claims." *Veneklase v. Bridgewater Condos, L.C.*, 670 F.3d 705, 716 (6th Cir. 2012). In other words, a district court must ordinarily exercise supplemental jurisdiction over all related state claims and should only decline to do so, in its discretion, for one or more of the reasons enumerated in § 1367(c). And even where a § 1367(c) circumstance applies, a district court does not necessarily abuse its discretion by exercising supplemental jurisdiction; in evaluating whether to do so, the district court should still consider and weigh judicial economy, convenience, fairness, and comity. *See Gamel*, 625 F.3d at 951. As such, district courts should

not read this opinion to restrict their broad discretion to exercise supplemental jurisdiction, as our holding here is narrowly tailored given the specific factual circumstances of this case.

## IV.

At oral argument, Williams requested that if we vacate the district court's decision to exercise supplemental jurisdiction, that we make clear that we are vacating the entire decision as to *all* state constitutional claims, including those not at issue in this appeal.  But Williams expressly abandoned his other state claims on appeal, so we will not consider them now.  *See Shearson v. Holder*, 725 F.3d 588, 593 n.1 (6th Cir. 2013) (declining to consider claim that plaintiff abandoned on appeal); *Lipman v. Budish*, 974 F.3d 726, 747 n.10 (6th Cir. 2020) (explaining that "claims raised in the district court but not briefed on appeal are abandoned" (citation omitted)).

## V.

For the reasons stated, we VACATE and REMAND with instructions for the district court to dismiss without prejudice Williams's Fair and Just Treatment claim and related assertion of *respondeat superior* liability.