*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0383p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

STATE OF OHIO ex rel. DANA SKAGGS and
KYLE FANNIN,

    *Relators-Appellants,*

   *v.*

JENNIFER L. BRUNNER, Secretary of the State
of Ohio and THE BOARD OF ELECTIONS OF
FRANKLIN COUNTY, OHIO,

    *Respondents-Appellees.*

No. 09-4282

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 08-01077—Algenon L. Marbley, District Judge.

Argued: November 16, 2010

Decided and Filed: December 16, 2010

Before: KENNEDY, SUTTON and McKEAGUE, Circuit Judges.

_____

## COUNSEL

_____

**ARGUED:** Christopher J. Hogan, ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellants. Richard N. Coglianese, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees. **ON BRIEF:** Christopher J. Hogan, John W. Zeiger, Marion H. Little, Jr., ZEIGER, TIGGES & LITTLE LLP, Columbus, Ohio, for Appellants. Aaron D. Epstine, OFFICE OF THE OHIO ATTORNEY GENERAL, Columbus, Ohio, for Appellees.

_____

## OPINION

_____

SUTTON, Circuit Judge. This is round two in a ballot-counting dispute arising from the 2008 elections in Franklin County, Ohio. In the first round, we held that the

1

defendants could not remove the case from state court to federal court because each of the claims turned on state law and the parties all hailed from Ohio. *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468 (6th Cir. 2008). Today, we consider whether the defendants should pay attorney's fees for improperly trying to remove the case. *See* 28 U.S.C. § 1447(c).

## I.

Ohio law provides that a voter may cast a provisional ballot if the voter's name does not appear on the list of eligible voters at a polling place. Ohio Rev. Code Ann. § 3505.181. Of the 27,000 provisional votes cast in Franklin County during the 2008 elections, about 1,000 had a potential defect: they did not contain the voter's name and signature. After the Franklin County Board of Elections identified this problem, two legal issues emerged: (1) does Ohio law require that a ballot include a name *and* signature, *see* Ohio Rev. Code Ann. § 3505.183(B)(1); and (2) even if it does, should the ballots be counted because Ohio law has an exemption for mistakes allegedly attributable to poll workers?

Ohio Secretary of State Jennifer Brunner took the position that the ballots complied with Ohio law, which prompted two Franklin County voters to file an original action in the Ohio Supreme Court against the Secretary and the Franklin County Board of Elections. The "relators," the name given to claimants who file an action on behalf of others, sought a writ of mandamus to compel the defendants "to meet their clear legal duty under Ohio statutes." R.3 at 4. "No federal law claims," the complaint added, "are asserted; rather, Relators seek a writ requiring respondents to comply with the state law statutory requirements of [Ohio Rev. Code §§] 3505.181, 3505.182, 3505.183, and 3505.18." *Id.*

The Secretary nonetheless read the claims as raising issues of federal law and removed the case to federal court. The relators moved to remand the case to state court, and the district court denied the motion. *Ohio ex rel. Skaggs v. Brunner*, 588 F. Supp. 2d 819 (S. D. Ohio. 2008). A few days later, the court granted the Secretary's motion for summary judgment. *Ohio ex rel. Skaggs v. Brunner*, No. 2:08-cv-1077, 2008 WL

5100684 (S.D. Ohio Nov. 20, 2008). The relators appealed, and we vacated the district court's opinion after concluding it lacked subject matter jurisdiction. *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468 (6th Cir. 2008).

The relators sought attorney's fees under § 1447(c), and the court denied the motion. *Ohio ex rel. Skaggs v. Brunner*, No. 2:08-cv-1077, 2009 WL 3064199 (S.D. Ohio Sept. 18, 2009). This appeal followed.

II.

"An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). This provision gives district courts discretion to grant fees to the opposing party—they "may" grant fees—if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). We will reverse a trial court's fees decision only if it amounts to an abuse of discretion. *Bartholomew v. Town of Collierville*, 409 F.3d 684, 686 (6th Cir. 2005).

In removing the case, the Secretary invoked the district court's federal-question jurisdiction, R.1, which allows federal courts to hear cases "arising under" federal law, 28 U.S.C. § 1331. A complaint arises under federal law if it: (1) states a federal cause of action; (2) includes state-law claims that necessarily depend on a substantial and disputed federal issue; (3) raises state-law claims that are completely preempted by federal law; or (4) artfully pleads state-law claims that amount to federal-law claims in disguise. *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 560 (6th Cir. 2007) (en banc). The Secretary claims that at least one of these grounds, if not several of them, provided an objectively reasonable basis for removal. Whether they did is not as easy as the Secretary suggests.

*Federal Cause of Action.* The complaint by its terms does not state a federal cause of action. It says that the Secretary and the Board violated "their clear legal duty *under Ohio statutes*," namely "the *state law* statutory requirements of [Ohio Revised Code §§] 3505.181, 3505.182, 3505.183, and 3505.18." R.3 at 4–5 (emphases added).

Trying to eliminate any doubt about the point, the complaint disavows any reliance on federal law: "No federal claims are asserted." *Id.* The prayer for relief sings the same song: it asks for "a writ of mandamus compelling [the Secretary] [1] to correct her erroneous interpretation of [Ohio Revised Code §§] 3505.183(B)(1)(a) . . . [and] 3505.181," "[2] to advise the [Board] that any provisional voter must provide the identification verification information mandated by [Ohio Revised Code §] 3505.181" and "[3] to reject any [ballot] . . . if the [ballot] does not include both the name and signature of the voter . . . [as] required by [Ohio Revised Code §] 3505.183(B)(1)(a)." R.3 at 18–19. A complaint that invokes state law alone, and that mentions federal law only to disclaim any reliance on it, does not provide a basis for arising-under federal jurisdiction. Indeed, we have held that a complaint containing a federal-law disclaimer (like this one) deprives the defendant of an objectively reasonable basis for removal. *See Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1063 (6th Cir. 2008).

*Substantial Federal Question.* The next possibility exists when a state-law claim turns on a disputed and substantial federal issue, and exercising jurisdiction would not upset the traditional scope of the state courts' jurisdiction. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313, 318 (2005). Here, too, it is difficult to discern a legitimate basis for removal. There is no federal issue, substantial or otherwise, embedded in any of the state-law claims. It is not as if the plaintiffs claimed, say, that the defendant violated a state-law tort—negligence—by violating a federal standard of care. *See Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809–10 (1986). All that the plaintiffs said, and all that they could fairly be construed as saying, was that the defendants violated "Ohio statutes." R.3 at 4; *see* Ohio Rev. Code §§ 3505.181, 3505.182.

The Secretary resists the point, arguing that the complaint's reference to her pre-election interpretation of the state statutes—Directive 2008-101—raised a federal issue because she issued the directive in reference to a federal court's consent decree. *See* R.3 at 11–12; *Ne. Ohio Coalition for the Homeless v. Brunner*, No. 2:06-cv-896 (S.D. Ohio filed Oct. 24, 2006). But this argument ignores the context in which the complaint refers

to the directive. The complaint says that the Secretary violated several state statutes, not the court's consent decree, R.3 at 4–5, and used the Secretary's earlier interpretation of the statutes in the consent decree as *evidence* that she had violated state law, not the consent decree, *id.* at 11–12.

The Secretary's invocation of the consent decree, at any rate, at most raises *defenses* to the action. Yet the plaintiff, not the defendants, remains the master of a complaint, including the master of what law she opts to invoke in filing a claim. In the words of Justice Holmes: "Of course, the party who brings a suit is master to decide what law he will rely upon." *The Fair v. Kohler Die & Specialty Co.*, 228 U.S. 22, 25 (1913); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). That is why federal defenses generally do not provide a basis for § 1331 jurisdiction. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908). And that is why, more specifically, the issue-preclusive effect of a prior federal decision (the consent decree) may not convert a state-law claim (that the Secretary violated state statutes) into a federal claim. *Rivet v. Regions Bank of La.*, 522 U.S. 470, 476–77 (1998).

*Complete Preemption.* The Secretary does not maintain that federal law completely preempted these state-law claims. And with good reason: the doctrine of "complete preemption" applies only to Employee Retirement Income Security Act claims, *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987), Labor Management Relations Act claims, *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists*, 390 U.S. 557 (1968), and National Bank Act claims, *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1 (2003). Ohio's laws about the eligibility of provisional ballots do not implicate any of these statutes.

*Artful Pleading.* That leaves the possibility that these state-law claims amounted to federal claims in disguise. As the Secretary reads the complaint, it says that the State's interpretation of Ohio's election laws caused the claimants' votes to be diluted, R.3 at 4–5, and vote dilution establishes a federal claim, *see Bush v. Gore*, 531 U.S. 98 (2000). But the "artful pleading" doctrine does not apply whenever it is *possible* to construe a state-law theory as a federal one. Otherwise, any complaint that invoked

theories that appear in state and federal law would amount to a federal claim, even if the complaint invoked only state statutes or state constitutional provisions. Rather, "[t]he artful pleading doctrine allows removal where federal law completely preempts a plaintiff's state-law claim," *Rivet*, 522 U.S. at 475, or perhaps (it is not clear after *Rivet*) where federal issues necessarily must be resolved to address the state law causes of action, *see* Charles Alan Wright et al., Federal Practice & Procedure § 3722.1. The Secretary's theory does not satisfy these requirements. An allegation of "vote dilution" exists at a nose-bleed level of generality—so general that the allegation by itself could cover *any* violation of election law, whether contained in municipal, state or federal law, and whether contained in ordinances, statutes or constitutions. To allege that election officials have violated a legal requirement with respect to vote counting invariably may be characterized as a claim of "vote dilution" by some or of "vote aggrandizement" by others. A complaint's reference to "vote dilution" thus does not necessarily invoke a federal cause of action any more than a claim that officials have "violated election law" does so. In each setting, more information is required, and here the words of the complaint and the context in which they arise show that the claimants relied only on state law.

All of this shows why we would have been inclined to grant the claim for attorney's fees had the choice been ours to make in the first instance. As we read the complaint, it is difficult to identify an objectively reasonable basis for the Secretary's removal, whether one looks at each potential ground for removal or aggregates them together. But the call was not initially delegated to us, and that makes all the difference. The case calls for abuse-of-discretion review, suggesting a range of plausible assessments about whether removal was objectively reasonable. *See Martin*, 546 U.S. at 139; *Bartholomew*, 409 F.3d at 686. We have laid out one plausible way to assess the grounds for removal, but it is not the only one.

Keep in mind that this district court judge not only thought the removal was objectively reasonable, but he also denied the motion to remand the case to state court. *Skaggs*, 588 F. Supp. 2d 819. The point favors the Secretary, as we can assume that

district courts rarely allow parties to remove cases that were objectively unreasonable to remove.  The point does not end the matter, however, as this court has reversed at least one district court decision declining to grant fees even after the same judge had originally denied the motion to remand the case to state court.  *Ahearn v. Charter Twp. of Bloomfield*, 149 F.3d 1182, 1998 WL 384558, *2–4 (6th Cir. June 18, 1998) (unpublished table decision), *overruled on other grounds*, *Warthman*, 549 F.3d 1055.  A few other considerations cut the Secretary's way.  No one alleges that the Secretary removed the case to delay litigation or to impose additional litigation costs on the plaintiffs.  Not just the Secretary, but the courts as well, labored under considerable time pressures to resolve this ballot-counting dispute quickly so that a congressional seat could be timely filled.  Any delay caused by the failed removal could not have exceeded two weeks.

One other point deserves mention.  In *Warthman*, this court provided a safe harbor designed to prevent federal-question removals if the complaint relied only on state law and if it disclaimed any reliance on federal law.  *See* 549 F.3d at 1063.  Yet *Warthman* was decided one month *after* the Secretary removed this case, making it unfair to hold her accountable for failing to predict the future.  Had *Warthman* already been on the books at the time and had the Secretary nonetheless removed this action, however, a different outcome seems likely.  Instead of a close case in which it still plausibly could be said that the district court acted within its discretion in denying fees, we would have a difficult-to-justify removal.  The point of fee-shifting statutes is to influence litigants' conduct by making them pay for the costs of improper removals.  Because "[d]iscretion is not a whim," *Martin*, 546 U.S. at 139, a post-*Warthman* removal in this situation would require fees, *Warthman*, 549 F.3d at 1060–61 ("[I]n cases where the removal was not objectively reasonable . . . the district court may exercise its discretion to award fees or not, keeping in mind . . . the general presumption that fees should be awarded under such circumstances."); *id.* at 1063 ("Including [a disclaimer] in complaints is an excellent practice . . . because it avoids the procedural delay and expense of removal and remand.").

III.

For these reasons, we affirm.