RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0065p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

NORTON OUTDOOR ADVERTISING, INC.,

*Plaintiff-Appellant*,

v.

VILLAGE OF ST. BERNARD, OHIO; GERALD L. STOKER,
Building Commissioner; BOARD OF ZONING APPEALS;
VILLAGE OF ST. BERNARD, OHIO,

*Defendants-Appellees*.

No. 25-3265

———————————

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:20-cv-00350—Michael R. Barrett, District Judge.

Argued: February 18, 2026

Decided and Filed: March 4, 2026

Before: BOGGS, MOORE, and GIBBONS, Circuit Judges.

———————————

## COUNSEL

———————————

**ARGUED:** Michael A. Galasso, ROBBINS, KELLY, PATTERSON & TUCKER, Cincinnati, Ohio, for Appellant. Ray C. Freudiger, MARSHALL DENNEHEY, P.C., Cincinnati, Ohio, for Appellees. **ON BRIEF:** Michael A. Galasso, Zachary C. Schaengold, ROBBINS, KELLY, PATTERSON & TUCKER, Cincinnati, Ohio, for Appellant. Ray C. Freudiger, MARSHALL DENNEHEY, P.C., Cincinnati, Ohio, for Appellees.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. The Village of St. Bernard ("Village"), a small municipality and enclave of Cincinnati, relied on its billboard ordinance to prohibit Norton

Outdoor Advertising, Inc. ("Norton") from erecting a digital billboard. Norton sued, raising various arguments against the Village's ordinance under the First Amendment. After the district court granted summary judgment to the Village, we reversed, holding that one portion of the Village's ordinance governing "public service" signs was an invalid content-based restriction on speech. *Norton Outdoor Advert., Inc. v. Village of St. Bernard* ("*Norton I*"), 99 F.4th 840, 842 (6th Cir. 2024). In so doing, we remanded the case to the district court to determine in the first instance whether the unconstitutional public-service exemption was severable from the rest of the ordinance. The district court, finding that the provision was severable and that the remainder of the ordinance satisfied intermediate scrutiny, again granted judgment in favor of the Village, and Norton appealed once more. Because the public-service exemption is severable and the ordinance otherwise passes constitutional muster, we affirm.

## I. BACKGROUND

Like many municipalities, the Village has enacted rules governing the placement and nature of billboards within its boundaries. The Village's billboard regulations are set forth in Chapter 711 of its ordinances, which governs "[e]xpressway [a]dvertising." R. 1-1 (Ordinances, Ch. 711) (Page ID #41–43). Subchapter 711.01 sets forth Chapter 711's intent: to "reduc[e] the distractions to motorists and thus reduc[e] traffic and safety hazards," "decreas[e] the excessive number of accidents . . . occurring on the Interstate system and primary highway," "[r]educe the risk of injury" to first responders, "increase[] property values and increas[e] the interest of individuals to live within St. Bernard," and to "[r]educe the potential for visual blight." *Id.*, Ch. 711.01 (Page ID #41). The Chapter's defined terms include "[o]utdoor [a]dvertising [s]ign," which is a "sign, . . . billboard, or any other contrivance designed, intended, or used to advertise or to give information in the nature of advertising, . . . which [is] visible from the main traveled way of any highway on the Interstate system or primary system." *Id.*, Ch. 711.02(a) (Page ID #41). There are four exceptions to the definition of outdoor advertising signs:

(1) Signs primarily intended to promote the sale of goods, products, services, or events on the same premises as the sign . . . .

(2) Directional or traffic control signs posted by a public authority.

(3) Signs advertising the sale or lease of property on which they are located.

(4) Public service signs which disclose information such as time or weather, provided such signs are not used to advertise or promote goods, products, services, or events.

*Id.* Subchapter 711.02 also defines the term "[v]ariable [m]essage [s]ign" as "a sign whose message is partially changed by electronic process or remote control." *Id.*, Ch. 711.02(m) (Page ID #41).

Outdoor advertising signs in the Village are subject to various requirements, including restrictions on size, location, and spacing. *Id.*, Ch. 711.07 (Page ID #42–43). "[V]ariable message outdoor advertising signs are not permitted." *Id.*, Ch. 711.07(e) (Page ID #43). Finally, the ordinance implements what it calls a "[c]ap and [r]eplace" system, under which "no person shall construct an outdoor advertising sign without first removing outdoor advertising signs equal in face area and number of faces." *Id.*, Ch. 711.07(f)(1) (Page ID #43).

The factual and procedural background underlying Norton's first appeal is canvassed in *Norton I*, 99 F.4th at 842–44. In that decision, we held that strict scrutiny applied to the ordinance's public-service exemption because "[t]o exempt this universe of signs from the regulations pertaining to outdoor advertising signs, we must inherently look to the content of the signs." *Id.* at 850. Because the Village failed to show that the exemption was narrowly tailored to achieve a compelling interest (i.e., satisfied strict scrutiny), it violated the First Amendment. *Id.* at 851–52. We declined, however, to determine the appropriate remedy, recognizing courts' "'decisive preference for surgical severance rather than wholesale destruction' of a statutory scheme." *Id.* at 852 (quoting *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 626 (2020)). Noting that severability was "a distinct legal issue in this case meriting further thought from the parties," and was "not briefed" in Norton's first appeal, we remanded to the district court. *Id.*

On remand, the parties filed supplemental motions for summary judgment. R. 74 (Norton Supp. Mot. for Summ. J.) (Page ID #2236–81); R. 76 (Village Supp. Mot. for Summ. J.) (Page ID #2316–34). A magistrate judge then issued a report and recommendation, which found that the exemption was severable and that the remainder of Chapter 711 survived intermediate scrutiny, and recommended granting summary judgment to the Village. R. 81 (R&R) (Page ID

#2447–81).   The magistrate judge also recommended finding that Norton was not a prevailing party entitled to attorney fees.   *Id.* at 30–33 (Page ID #2476–79).   Norton objected to these determinations, R. 84 (Objections to R&R) (Page ID #2486–2532), the district court adopted the R&R in full, R. 86 (Op. & Order) (Page ID #2573–84), and Norton timely appealed, R. 88 (Notice of Appeal) (Page ID #2586–87).

## II.  ANALYSIS

### A.  Standard of Review

We review de novo a district court's grant of summary judgment.   *Hughes v. Gulf Interstate Field Servs., Inc.*, 878 F.3d 183, 187 (6th Cir. 2017).   Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B.  Forfeiture

Norton begins by arguing that the district court erred in addressing severability at all because the Village waived severability.   However, forfeiture, rather than waiver, is the appropriate framework for evaluating Norton's assertion.   *See Hamer v. Neighborhood Hous. Servs. of Chi.*, 583 U.S. 17, 20 n.1 (2017) ("The terms waiver and forfeiture—though often used interchangeably by jurists and litigants—are not synonymous.").   Waiver is a party's "intentional relinquishment or abandonment of a known right," whereas forfeiture occurs when a party "fail[s] to make the timely assertion of a right."  *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 443 (6th Cir. 2021) (quoting *United States v. Petlechkov*, 922 F.3d 762, 767 (6th Cir. 2019)).   In other words, "[w]aiver is affirmative and intentional, whereas forfeiture is . . . more passive." *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).   The question of a party's failure to timely raise a particular argument is, accordingly, typically one of forfeiture.   *See, e.g.*, *id.*; *Lucaj v. FBI*, 852 F.3d 541, 547 n.4 (6th Cir. 2017); *Redbubble*, 989 F.3d at 443–44.   The same is true here, where Norton argues that the Village did not argue severability early enough in the course of this litigation.   Recognizing as much, and because there was no "affirmative and intentional" relinquishment of severability below, we apply forfeiture principles. *Berkshire*, 928 F.3d at 530.

Here, the district court found that the Village had not forfeited severability, so we "review [its] ruling on forfeiture for an abuse of discretion." *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012); *see also Slinger v. Pendaform Co.*, No. 21-5276, 2022 WL 2133745, at *2 (6th Cir. June 14, 2022). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *King*, 694 F.3d at 660 (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 678 F.3d 409, 416 (6th Cir. 2012)). "Such review suggests 'a range of plausible assessments' about the question considered." *Id.* (quoting *Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 532 (6th Cir. 2010)).

We see no abuse of discretion here. In the first round of summary-judgment briefing, the Village did not outline any detailed argument regarding severability, but instead cited the standard for severability under Ohio law and stated:

> Should this Court deem any portions of the Ordinances unconstitutional, Defendants reserve the right to argue severability and this Court is respectfully requested to allow Defendants to present a severability analysis to determine whether such Ordinances consist of several and independent parts whereby, standing alone, legal effect can be given to the parts which are constitutional.

R. 38 (Village Mot. for Summ. J. at 33) (Page ID #1492). Because the district court initially upheld the ordinance in its entirety, there was no further briefing on severability prior to our decision in *Norton I*. We therefore remanded with instructions for the district court to resolve the issue of severability "in the first instance," *Norton I*, 99 F.4th at 852, and the parties briefed the issue extensively. *See* R. 74 (Norton Supp. Mot. for Summ. J. at 6–16) (Page ID #2252–62); R. 76 (Village Supp. Mot. for Summ. J. at 9–18) (Page ID #2324–33). Examining this record, the magistrate judge found that "the Village's intent to argue severability [was] plain [and] supported by citation to appropriate case law." R. 81 (R&R at 7) (Page ID #2453). Because the Village had therefore not "wholly failed to raise the issue," the court declined to find that the Village had forfeited severability. *Id.* This finding makes good sense, and certainly falls with the "range of plausible assessments" regarding forfeiture. *King*, 694 F.3d at 660 (quoting *Skaggs*, 629 F.3d at 532). Norton's suit "launche[d] a barrage of attacks" on different provisions of the Village's ordinance. *Norton I,* 99 F.4th at 844. Given the number of different provisions

targeted, it would have been nigh-impossible for the Village to articulate a comprehensive severability argument without advance knowledge of which (or which combination of) provisions might ultimately be held unconstitutional. Had Norton initiated a narrower challenge targeting only the public-service exemption from the beginning, a more thorough severability argument might have been appropriate. Under these circumstances, however, the district court acted "squarely within [its] authority" "'to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases.'" *Slinger*, 2022 WL 2133745, at \*2 (quoting *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016)). We therefore consider the question of severability on the merits.

## C. Severability

"Severability of a local ordinance is a question of state law." *Int'l Outdoor, Inc. v. City of Troy*, 77 F.4th 432, 437 (6th Cir. 2023) (quoting *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988)). Ohio uses a three-part severability test, first set forth nearly a century ago in *Geiger v. Geiger*, 160 N.E. 28 (Ohio 1927). *See State v. Hochhausler*, 668 N.E.2d 457, 466–67 (Ohio 1996). That test asks:

> (1) Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself? (2) Is the unconstitutional part so connected with the general scope of the whole as to make it impossible to give effect to the apparent intention of the Legislature if the clause or part is stricken out? (3) Is the insertion of words or terms necessary in order to separate the constitutional part from the unconstitutional part, and to give effect to the former only?

*Id.* (quoting *Geiger*, 160 N.E. at 33). Ohio Code also provides "that statutory provisions are presumptively severable," including in cases involving local ordinances. *State ex rel. Sunset Estate Props., LLC v. Village of Lodi*, 30 N.E.3d 934, 938–39 (Ohio 2015) (citing Ohio Rev. Code § 1.50). Under Ohio Rev. Code § 1.50, the invalidity of one provision "does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application." *Id.* (quoting Ohio Rev. Code § 1.50). The parties agree that the first *Geiger* part is satisfied, so we focus our attention on the test's second and third elements.

The ordinance satisfies the second *Geiger* part.  To demonstrate severability, the Village must show that it remains "[]possible to give effect to the apparent intention of the Legislature if the [public-service exemption] is stricken out." *Hochhausler*, 668 N.E.2d at 466–67 (quoting *Geiger*, 160 N.E. at 33).  Put differently, severance is permitted where the "invalid part . . . is not . . . so related to the general purpose of [the] enactment as to warrant the conclusion that the [legislature] would have refused to adopt the statute with the invalid part thereof stricken therefrom." *Emmons v. Keller*, 254 N.E.2d 687, 688 (Ohio 1970) (syllabus ¶ 3), *overruled on other grounds by Kinney v. Kaiser Aluminum & Chem. Corp.*, 322 N.E.2d 880 (Ohio 1974).  "To determine intent, a court looks to the language of the statute." *State ex rel. Butler Twp. Bd. of Trs. v. Montgomery Cnty. Bd. of Comm'rs*, 922 N.E.2d 945, 949 (Ohio 2010).  The ordinance's text is explicit about the Village's intent, which is to reduce motorist distraction and "blight" in the Village.  R. 1-1 (Ordinances, Ch. 711.01) (Page ID #41).  To achieve this purpose, Chapter 711 imposes a detailed set of requirements on all highway billboards in the Village and limits the permitting of new billboards.  *Id.*, Ch. 711.07 (Page ID #42–43).

We have no doubt that the Village's "apparent intention" will be given effect even if the public-service exemption is severed.  *Hochhausler*, 668 N.E.2d at 466–67 (quoting *Geiger*, 160 N.E. at 33).  Severing the exemption keeps in place the regulations governing non-public-service billboards, which were the primary target of the ordinance, and therefore limits motorist distractions.  Indeed, striking the exemption for public-service signs, if anything, *furthers* these aims by applying the same rules to public-service signs that govern billboards such as Norton's.  Courts have routinely determined that billboard ordinances' invalid provisions are severable in light of the general intent behind such regulations.  The Ohio Court of Appeals, for instance, has held that an unconstitutionally vague height restriction in a sign ordinance was severable from the remainder of the ordinance.  *Village of Ottawa Hills v. Afjeh*, No. L-02-1364, 2004 WL 3017241, at *5–6 (Ohio Ct. App. Dec. 30, 2004).  And we have held (applying Michigan law) that invalid content-based exemptions from a local sign ordinance were severable.  *Int'l Outdoor*, 77 F.4th at 438–40; *see also Lamar Co. v. Lexington-Fayette Urb. Cnty. Gov't*, 677 F. Supp. 3d 673, 690 (E.D. Ky. 2023) ("Lamar has failed to demonstrate that the ordinance could not remain in force absent the challenged exemptions for [electronic] signs.").  We follow course and agree

with the magistrate judge's determination that "severing the discrete exemption in Ch. 711.02(a)(4) would minimally impact the overall legislative intent to promote traffic safety and aesthetics by limiting off-premises 'outdoor advertising signs.'" R. 81 (R&R at 18) (Page ID #2464).

Resisting this conclusion, Norton argues that the district court should have engaged in a detailed analysis of the exact effect that severance will have upon signs formerly subject to the public-service exemption. *See* D. 21 (Reply Br. at 9–13). But the severability inquiry does not require a court to unpack the minutiae of how the scheme will apply absent the exemption—it is a legal question involving the statutory scheme itself and whether a legislature "would have refused to adopt [it] with the invalid part thereof stricken therefrom." *Emmons*, 254 N.E.2d at 688. In so doing, courts must focus not on the specifics of the provision at issue but on the statute's "general purpose." *Id.* It is beyond dispute that Chapter 711's general purpose is to regulate and abate the impact of highway billboards, not to protect public-service signs.

Norton also points to the law's "cap and replace" provision in Ch. 711.07(f), arguing that severance cannot be allowed because it would "expand the number of signs" subject to the ordinance's regulation of outdoor advertising signs. D. 21 (Reply Br. at 10) (emphasis removed). This makes little sense. To begin with, "cap and replace" is somewhat of a misnomer. The rule does not include a numerical cap on the number of outdoor advertising signs, but instead requires that the construction of a new outdoor advertising sign occur only upon removal of another outdoor advertising sign. R. 1-1 (Ordinances Ch. 711.07(f)(1)) (Page ID #43). "One-in, one-out" would therefore be a more accurate descriptor. Severing the exemption and bringing public-service signs within the ambit of this one-in, one-out rule is neither impossible nor fundamentally contrary to the Village's legislative intent. Keeping the provision in place, moreover, would certainly do more to further the ordinance's intent than scrapping the scheme altogether in the name of protecting public-service signs from the one-in, one-out rule.

The third *Geiger* factor is also satisfied because Norton has not shown that the "insertion of words" is necessary to excise the public-service exemption from the rest of the ordinance.

*Hochhausler*, 668 N.E.2d at 467 (quoting *Geiger*, 160 N.E. at 33). Norton focuses once again on the "cap and replace" provision, but it fails to explain what words must be inserted, or where. Its argument appears to amount to the proposition that "additional language would need to be added to Chapter 711" to render lawful those variable-message public-service signs that were previously exempt. D. 14 (Norton Br. at 31). This argument completely misses the point of severability analysis. The question posed by *Geiger*'s third part is not whether words would need to be inserted for a statute to operate exactly the same after severance as before. Were that so, severance would be virtually impossible under Ohio law, because excising any provision would require the insertion of curative language to ensure that the statute or ordinance at issue remained effectively unchanged. Ohio law is not so strict. The *Geiger* test asks simply whether "the insertion of words or terms [is] necessary in order to . . . give effect to" a law's constitutional portions. *Hochhausler*, 668 N.E.2d at 467 (quoting *Geiger*, 160 N.E. at 33). Because Norton has not demonstrated how, absent the insertion of further words or terms, the remainder of Chapter 711 would be rendered ineffective, we hold that all three *Geiger* factors are met, and the public-service exemption may be severed from the rest of the Village's ordinance.

Perhaps recognizing that *Geiger* is unavailing, Norton argues that we should layer on top of that test the principle that severance is barred whenever it would "create[] a broader law than [the] legislature intended." D. 14 (Norton Br. at 33). Norton begins by pointing to a concurrence in *State ex rel. English v. Industrial Commission*, 115 N.E.2d 395 (Ohio 1953). There, in a separate writing appended to a brief per curiam opinion, Justice Kingsley Taft[1] opined that severing an exclusion of municipal police and firefighters from the Ohio Workmen's Compensation Act was impossible because "the statute would be given a meaning with respect to a fireman such as relator directly contrary to the intention expressed by the words which the General Assembly used." *Id.* at 396 (Taft, J., concurring). Norton also points to two earlier Ohio Supreme Court cases along similar lines, but those support only a narrower set of propositions regarding severance. In the first, *State ex rel. Wilmot v. Buckley*, 54 N.E. 272, 275

---

[1]Justice Kingsley Arter Taft of the Ohio Supreme Court, not President and Chief Justice (and former judge of this court) William Howard Taft. *See Kingsley Arter Taft*, Supreme Court of Ohio (last accessed December 5, 2025), https://www.supremecourt.ohio.gov/courts/judicial-system/supreme-court-of-ohio/justices-1803-to-present/kingsley-taft/.

(Ohio 1899), the court addressed an election law that applied to "cities of the first and second class" but excepted "Mansfield and cities of the fourth grade in the first class." The court considered whether "if this exception makes the act unconstitutional, the exception should be disregarded, and the act held valid, as operating uniformly throughout the state." *Id.* The court found severance was impermissible because in the case of a territorial statute, "the general assembly never enacted the statute in the excepted territory, and the court has no power to enact it therein." *Id.* Norton's next case, *State Bd. of Health v. City of Greenville*, 98 N.E. 1019 (Ohio 1912), likewise addressed a law that applied to only a subset of cities and villages in the state. The court rejected the idea that it could "legislat[e] for *territory* never included by the General Assembly in the operation of the statute." *Id.* at 1026 (emphasis added).

This trio of cases does not help Norton for two reasons. First, to the extent that *Buckley* and *City of Greenville* remain good law, they are best read to extend only to acts of the Ohio Legislature that apply to a subset of the territorial jurisdictions in the state. *Buckley*, 54 N.E. at 275; *City of Greenville*, 98 N.E. at 1025–26. That is, if a billboard law enacted by Ohio's General Assembly applied to the Village but not to Cincinnati, a court could not sever the exemption for Cincinnati and apply the law there, too. This principle is simply inapposite to this case, which concerns a local ordinance.

Second, to the extent that the solo concurrence in *English* reads into these cases a broader rule that prohibits severance of any statutory exception, that rule conflicts with *Geiger*. Under *Geiger*, an unconstitutional exemption to a statute or ordinance requires a court to ask whether (1) the statute can stand alone without the exemption, (2) whether striking the exemption still gives effect to the legislature's intention in passing the statute, and (3) whether the addition of words to the statute is required. *Geiger*, 160 N.E. at 33. The second part asks, at bottom, whether the legislature or municipality "would have refused to adopt" the law absent the offending portion. *Emmons*, 254 N.E.2d at 688. In the case of some exemptions, as here, the answer will be "no." *See, e.g.*, *McCreary v. Bowers*, 155 N.E.2d 224, 228 (Ohio Ct. App. 1958) ("Certainly the Legislature would have passed the act without the provision exempting trailers weighing less than 3,000 pounds."). But a rule that severance is impermissible if the law would sweep more broadly than initially written would apply in any case involving an unconstitutional

exemption.  That is because any exemption necessarily *narrows* the scope of a law, so its severance will *ipso facto* sweep in previously unregulated persons or entities.**2**  Ohio's recent caselaw, moreover, overwhelmingly applies *Geiger*, not the solo concurrence's more restrictive test.  *See, e.g.*, *City of Columbus v. State*, 223 N.E.3d 540, 554 (Ohio Ct. App. 2023); *State v. Noling*, 75 N.E.3d 141, 150–51 (Ohio 2016); *Village of Lodi*, 30 N.E.3d at 939; *State v. Romage*, 7 N.E.3d 1156, 1161–62 (Ohio 2014); *City of Cleveland v. State*, 5 N.E.3d 644, 650 (Ohio 2014).  We will not, therefore, apply a rule that runs counter to binding law frequently applied by the Ohio Supreme Court.

These considerations also render unpersuasive Norton's reliance on *City of Tipp City v. Dakin*, 929 N.E.2d 484 (Ohio Ct. App. 2010).  *Tipp City* involved a sign-permitting regime with a cornucopia of content-based exemptions as well as size and design limitations in violation of the First Amendment.  *Id*. at 489–90, 499–502.  Considering severability, the court looked to *English*, *Buckley*, and *Greenville* to hold that the exceptions to the ordinance's permit requirement could not be severed and, therefore, "the permit requirement itself is unconstitutional and cannot be enforced."  *Id.* at 503–04.  Although *Tipp City* bears some similarity to this case, its reliance on the *English* line of cases, coupled with its failure to apply *Geiger*, undermines any potential persuasive value.  Certainly, we will ordinarily "follow a decision of the state appellate court" such as *Tipp City*, but we will not do so if "'convinced by other persuasive data that the highest court of the state would decide otherwise.'"  *Am. Tooling Ctr., Inc. v. Travelers Cas. & Sur. Co.*, 895 F.3d 455, 460 n.1 (6th Cir. 2018) (quoting *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 517 (6th Cir. 2001)).  Here, the Ohio Supreme Court's consistent reliance on *Geiger* as the measure of severability, not to mention the statutory presumption in favor of severability, convince us that *Tipp City* does not accurately reflect Ohio law.

---

**2**Along similar lines, Norton's proposed rule would turn Ohio Rev. Code § 1.50, under which "statutory provisions are presumptively severable," *Village of Lodi*, 30 N.E.3d at 939, on its head, replacing it with a rule rendering exemptions presumptively nonseverable.

## D. Application of Intermediate Scrutiny

Having held that the public-service exemption is severable, we must decide whether the remainder of the ordinance survives the appropriate level of First Amendment scrutiny. Norton first contends that, notwithstanding our holding in *Norton I* that strict scrutiny applies only to the public-service exemption, 99 F.4th at 851, we must apply strict scrutiny to the entire ordinance, D. 14 (Norton Br. at 42–46). This argument finds no support in the law or the record. Strict scrutiny applies only to laws "that target speech based on its communicative content." *Norton I*, 99 F.4th at 847 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015)). In its attempt to circumvent our holding in *Norton I*, Norton argues that, despite the remainder of the ordinance's facial neutrality, the Village has nevertheless applied it in a manner that focuses on content. D. 14 (Norton Br. at 43–45). But the evidence it cites for this proposition, a deposition of the Village's zoning inspector, is the inspector's commentary regarding how he would apply the public-service exemption to determine whether a proposed sign constitutes "advertising." R. 32 (Stoker Dep. at 139–49) (Page ID #793–803). Norton's argument thus supports only the conclusion we already reached in *Norton I*—that the public-service exemption must meet strict scrutiny—and no more.

Even non-content-based restrictions on speech, however, must still pass intermediate scrutiny. They must, that is, "be 'narrowly tailored to serve a significant governmental interest.'" *City of Austin v. Reagan Nat'l Advert. of Austin, LLC*, 596 U.S. 61, 76 (2022) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Laws like the Village's billboard ordinance, which regulates the time, place, and manner of speech, "are valid provided [1] that they are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored [3] to serve a significant governmental interest, and [4] that they leave open ample alternative channels for communication of the information." *Hucul Advert., LLC v. Charter Township of Gaines*, 748 F.3d 273, 276 (6th Cir. 2014) (quoting *Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818 (6th Cir. 2005)).[3]

---

[3]The district court applied the test for restrictions on commercial speech as laid out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of N.Y.*, 447 U.S. 557, 566 (1980). Under that test, a restriction on commercial speech is valid if it (1) "seeks to implement a substantial governmental interest," (2) "directly advances

Does the Village's ordinance pass this test?  Our prior billboard cases tell us yes, and emphatically so.  "We have long recognized that governmental interests in aesthetics, traffic safety, and the preservation of property values constitute 'significant governmental interests.'" *Id.* at 277–78 (quoting *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507–08 (1981)); *see also Prime Media*, 398 F.3d at 819 ("The regulations advance legitimate governmental interests—aesthetics and traffic safety."); *Metromedia*, 453 U.S. at 507–08.[4]  These interests— traffic safety, aesthetics, and property values—are exactly those cited by the Village as motivating its billboard ordinance.  R. 1-1 (Ordinances, Ch. 711.01) (Page ID #41).  And Norton does not contest the issue of whether the ordinance "leaves open ample alternative channels for communication."  *Hucul*, 748 F.3d at 280.  This leaves only the question of whether "the regulations are narrowly tailored to serve the governmental interests mentioned."  *Id.* at 278.

Narrow tailoring requires "a reasonable fit between the legislature's ends and the means chosen to accomplish those ends."  *Id.* (quoting *Prime Media*, 398 F.3d at 822); *see also Members of the City Council of L.A. v. Taxpayers for Vincent*, 466 U.S 789, 808 (1984).  Such a fit exists here.  We have consistently upheld time, place, and manner restrictions on billboards so long as *some* logical relationship exists between the restrictions imposed and the municipality's interest in traffic safety and aesthetics.  In *Hucul*, we held that restrictions on "digital billboards" and a "spacing requirement" were narrowly tailored because "digital billboards, which change constantly, . . . may very well present greater safety concerns (and perhaps greater aesthetic ones) than do static billboards," and the plaintiff "offere[d] no evidence suggesting that [the] spacing requirement provide[d] no incremental benefits over a less restrictive regulation."  *Id.* at 280.  In *Prime Media*, we upheld billboard size and height restrictions on similar grounds,

---

that interest," and (3) "reaches no further than necessary to accomplish the given objective."  *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981).  Although "[a]s a practical matter, the choice of which test to apply makes little difference[,] . . . where an ordinance regulates both commercial and non-commercial speech and does not differentiate between the two, the application of time, place, and manner scrutiny is appropriate."  *Hucul*, 748 F.3d at 276–77 (citing *Bench Billboard Co. v. City of Covington*, 465 F. App'x 395, 404–05 (6th Cir. 2012)).  The ordinance here applies just as much to non-commercial speech (such as billboards containing political or religious messages) as it does to commercial advertising.  We accordingly depart from the district court and apply the time, place, and manner test.

[4]Although the Court in *Metromedia* issued a four-justice plurality opinion authored by Justice White, Justice Stevens "join[ed] Parts I through IV of [that] opinion," 453 U.S. at 541 (Stevens, J., dissenting in part), rendering those portions of the opinion part of the Court's holding.

rejecting the plaintiff's demand for further evidence justifying the restrictions imposed. 398 F.3d at 821–24; *see also Rzadkowolski v. Village of Lake Orion*, 845 F.2d 653, 655 (6th Cir. 1988) (ordinance limiting billboards to Village's industrial zone was narrowly tailored); *Bench Billboard Co. v. City of Covington*, 465 F. App'x 395, 406–07 (6th Cir. 2012) (ban on advertising benches was narrowly tailored). Nothing in this case warrants a different conclusion. By limiting the proliferation of highway billboard advertising and prohibiting variable-message signs, the Village "did no more than eliminate [or reduce] the exact source of the evil it sought to remedy." *Taxpayers for Vincent*, 466 U.S. at 808. This is sufficient to support a holding that "[t]he fit between the [Village's] means and ends is a reasonable one." *Prime Media*, 398 F.3d at 821.

In Norton's view, by contrast, intermediate scrutiny requires the Village to point to record evidence, apart from the ordinance's statement of legislative purpose, showing that the ordinance directly advances the Village's public-safety and aesthetic interests. D. 14 (Norton Br. at 46–55). This contention renders Norton the latest in a long line of plaintiffs raising similar arguments. Because we and the Supreme Court have uniformly rejected these arguments in the billboard context, we do the same here. We begin with *Metromedia*, in which "it [was] asserted that the record is inadequate to show any connection between billboards and traffic safety." 453 U.S. at 508. The Supreme Court, however, refused "to disagree with the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety," finding "nothing . . . to suggest that these judgments are unreasonable." *Id.* at 509; *see also id.* at 510 (reaching "a similar result with respect to . . . advancement of the city's [a]esthetic interests"). We followed suit in *Prime Media*, in which the plaintiff "argue[d] that [the city] failed to provide sufficient evidence to support its regulation" of billboard height and size. 398 F.3d at 823. We rejected this contention, holding that *Taxpayers for Vincent* and *Metromedia* "make it plain that billboard regulations, whatever other strengths and weaknesses they may have, advance a police power interest in curbing community blight and promoting traffic safety." *Id.* The plaintiff in *Hucul* likewise insisted that the restrictions at issue there did not directly advance the township's interest, pointing to other municipal laws that were not as restrictive. 748 F.3d at 279. We held that "[t]he fact that different townships may

exercise their discretion differently . . . does not render the restrictions imposed by any one township unreasonable and not 'narrowly tailored' to a township's goals." *Id.* Simply put, none of our cases have required a municipality to justify a content-neutral billboard law by pointing to record evidence to demonstrate narrow tailoring, and we decline to hold the Village to a higher burden here.

Norton correctly points out that we have demanded that governments point to additional record evidence to survive intermediate scrutiny in cases outside of the billboard context. *See, e.g.*, *Pagan v. Fruchey*, 492 F.3d 766, 773–75 (6th Cir. 2007) (en banc); *Sambo's Rests., Inc. v. City of Ann Arbor*, 663 F.2d 686, 695 (6th Cir. 1981). But the fact that those cases did not involve billboards is exactly what distinguishes them from this one. As we recognized in *Pagan*, the "'law of billboards'" is governed by *Metromedia* and its progeny, which "demand[] deferential review of speech regulations promulgated in vindication of traffic safety and aesthetic interests." 492 F.3d at 774 (quoting *Metromedia*, 453 U.S. at 501). Norton may wish it were otherwise, but this is a billboard case and "the law of billboards" therefore applies. We therefore hold that the Village's billboard ordinance, after severance of the public-interest exemption, does not violate the First Amendment.

## E.  Damages and Fees

Norton concludes by arguing that, even if we affirm the district court's analysis regarding severability and the First Amendment (as we have done), it is entitled to damages and attorney fees. It is not. Norton's complaint sought declaratory and injunctive relief, in addition to compensatory damages and attorney fees, on the ground that the Village's ordinance violated its rights under the United States Constitution. R. 1 (Compl. ¶¶ A–M) (Page ID #38–40). But because the Village may continue to enforce its billboard ordinance as to Norton, no declaration, injunction, or damages is warranted. The fact that Norton made a winning argument before us regarding the unconstitutionality of the public-service exemption does not change things. Severance, after all, is an "interpretive endeavor" and not itself a remedy. *Lindenbaum v. Realgy, LLC*, 13 F.4th 524, 528 (6th Cir. 2021).

Nor is Norton a "prevailing party" entitled to attorney fees under 42 U.S.C. § 1988(b). "[T]he phrase 'prevailing party' in § 1988(b) is 'a legal term of art.'" *Lackey v. Stinnie*, 604 U.S. 192, 199–200 (quoting *Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Heath & Hum. Res.*, 532 U.S. 598, 603 (2001)). A prevailing party is one that "has successfully maintained" a claim "at the end of the suit" or, in other words, is "ultimately prevailing when the matter is finally set at rest." *Id.* at 200 (quoting Black's Law Dictionary 1352 (4th ed. 1968)). A judgment, even one that awards declaratory relief to a plaintiff, does not render that plaintiff a prevailing party if it "does not modify the defendant's behavior toward the plaintiff." *Id.* at 202 (citing *Rhodes v. Stewart*, 488 U.S. 1, 3–4 (1988) (per curiam)). Because the district court did not enter judgment in Norton's favor, and severing the public-service exemption does not require the Village to modify its behavior toward Norton, Norton is not entitled to attorney fees or costs.

## III. CONCLUSION

Norton's first appeal identified an unconstitutional provision in the Village's billboard ordinance. Because we may set aside that provision without doing violence to the ordinance's broader scheme, Ohio law requires severance. And because the remainder of the scheme survives intermediate scrutiny under the First Amendment, the district court's grant of judgment in the Village's favor was correct. We **AFFIRM**.